UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JACQUELINE McCURLEY, )
)
    Plaintiff, )
)
vs. ) CASE No. 06-CV-649-FHM
)
MICHAEL J. ASTRUE, )
Commissioner of the )
Social Security Administration, )
)
    Defendant. )

## OPINION AND ORDER

Plaintiff, Jacqueline McCurley, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might

---

[1] Plaintiff's January 17, 2001 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. After a hearing was conducted by an Administrative Law Judge (ALJ) on June 21, 2002, a decision denying benefits was issued December 23, 2002. Plaintiff filed an appeal of the decision in the U.S. District Court for the Northern District of Oklahoma, case no. 04-CV-96-SAJ. The district court reversed and remanded the case to the Commissioner by order entered March 22, 2005. A second hearing was conducted by the ALJ on February 1, 2006. By decision dated March 13, 2006, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on September 21, 2006. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 48 years old at the time of the second hearing. [R. 378]. She claims to be disabled due to urinary and bowel incontinence.[2] [Plaintiff's Brief, Dkt. 23]. In considering Plaintiff's claim under the five step process for determining whether a claimant is eligible to receive Social Security benefits, the ALJ found that Plaintiff engaged in substantial gainful activity after her alleged onset which is in violation of step one. [R. 292]. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail). Nonetheless, the ALJ proceeded to step two where he determined that Plaintiff does not have an impairment or combination of impairments that significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months. [R. 292]. He concluded, therefore, that Plaintiff does not have a severe impairment or combination of impairments. [R. 292]. Neither party raised the ALJ's step one finding as an issue in their briefs. Thus, the sole issue to be resolved

---

[2] In her brief, Plaintiff did not challenge the ALJ's determination that Plaintiff's medically determinable mental impairments of adjustment disorder with depressed mood and somatization disorder are not severe. [Dkt. 23]. Plaintiff's attorney advised the ALJ at the second hearing on February 1, 2006, that Plaintiff was satisfied with the mental CE's report that Plaintiff does not have any significant impairments from a mental standpoint. [R. 353].

in this case is whether the ALJ's step two determination is supported by substantial evidence.

Plaintiff asserts the ALJ: 1) failed to properly document the file with regard to claimant's condition; 2) erred by failing to recognize all her diagnosed impairments as severe; 3) erred by formulating an RFC that failed to include all her limitations; and 4) made an improper credibility assessment. [Dkt. 23, p. 5]. For the reasons discussed below, the Court affirms the decision of the Commissioner.

## The Administrative Record

The record indicates Plaintiff was treated in 1978 for cholecystitis with cholelithiasis.[3] [R. 124-156]. She was hospitalized at Doctors Hospital from May 13, 1999 to May 20, 1999, for acute cellulitis of the neck (severe) with sepsis of skin, impetigo and hypokalemia.[4] [R. 157-189]. James R. Loerke, D.O., Plaintiff's attending physician, reported Plaintiff had experienced some insect bites and possibly a tick bite on her head, had sores that spread rapidly through impetigo type lesions to her back, arms and feet and a sore on her neck which progressed to advanced cellulitis. [R. 158]. Plaintiff was treated with antibiotic therapy and wound care therapy and the impetigo type sores cleared up quite well but the neck condition remained persistent. Plaintiff clinically improved and was discharged to continue outpatient therapy with medications and to follow up with Dr. Loerke

---

[3] Cholecystitis is inflammation of the gallbladder. *See* Dorland's Ill. Med. Dictionary (Dorland's), 28th ed. (1994) 316.  Cholelithiasis is the presence or formation of gallstones. Dorland's at 318.

[4] Cellulitis is an acute diffuse, spreading, edematous (excessive fluid), suppurative (producing pus) inflammation of the deep subcutaneous (beneath the skin) tissues and sometimes muscle, which may be associated with abscess formation, usually caused by infection of an operative or traumatic wound, burn or other cutaneous lesion by bacteria, most commonly streptococci and staphylococcus aureus agents. Dorland's at 295.

or Dr. Nunn, the consultative physician, as needed. Studies for Rocky Mountain Spotted Fever, Lyme's disease and other tick born fevers were performed and the results were pending at the time of discharge. [R. 158]. Those lab results are found in the record at pages 164-170.

Plaintiff was examined by Angelo Dalessandro, D.O., on April 2, 2001. [R. 100-107]. Dr. Dalessandro reported Plaintiff had been hospitalized "for cellulitis of the neck and not for Lyme disease," that the Lyme test taken in May 1999 was equivocal at 0.95C and that the diagnosis at that time was abscess of her neck. *Id.*

There are no follow-up treatment reports in the record from Doctors Hospital, Dr. Loerke or Dr. Nunn. Plaintiff testified at the first hearing on June 21, 2002, that she had not been to a doctor since 1999 [R. 268] but she was told by both doctors at Doctors General in 1999 that she had Lyme disease. [R. 272]. During that first hearing, the ALJ pointed out that the diagnosis in 1999 was cellulitis and that the tests for Lyme disease were pending when Plaintiff was discharged. [R. 273]. He also noted the presence in the record of evidence that the Lyme test was [equivocal]. [R. 272]. Plaintiff's attorney requested a consultative evaluation which the ALJ granted. [RR. 275-278].

On October 29, 2002, Plaintiff was examined by E. Joseph Sutton, II, D.O., F.A.C.O.I., a specialist in internal medicine and pulmonary diseases. [R. 224-235]. Dr. Sutton noted Plaintiff's employment as a home health worker, that she does some housework and some shopping and that she walks for exercise and plays outside with her dog. [R. 225]. Plaintiff's physical examination was unremarkable. She had normal range of motion study, normal reflexes, normal grip strength and normal finger/thumb

approximation. Dr. Sutton assessed no restrictions with regard to lifting, carrying, standing, walking or sitting. He found Plaintiff would be able to frequently and perhaps continuously climb, stoop, kneel, balance, crouch and crawl. He assessed no restrictions in ability to reach, handle, feel, push, pull, see, hear or speak. He noted a very minor problem with asthma being aggravated in environments containing humidity or dust. [R. 226]. His overall impression was: 1) History of rectal and urinary incontinence; 2) History of Lyme disease and/or abscess at the left neck and ear; 2) History of tobacco use; and 4) Minor asthma. [R. 226].

At the commencement of the second hearing on February 1, 2006, Plaintiff submitted handwritten treatment notes from Jerry Nelms, D.O. [R. 348A-348B, 352]. The January 26, 2004 note indicates Plaintiff complained of lyme disease, severe headaches, getting tongue-tied, lump on back of head. [R. 348B]. Dr. Nelms wrote "Lyme disease 99?" "Cephalgia[5], wt loss, fever, weak." *Id.* He diagnosed depression, anxiety, tension cephalgia, sequela of Lyme and he prescribed Etodolac,[6] Stelazine,[7] and Paxil.[8] There was no mention of urinary or bowel incontinence. Dr. Nelms' February 10, 2004 follow-up note reports "much better" and refill of the same

---

[5] Cephalgia is headache. Dorland's at 298.

[6] Etodolac (Lodine) is a non-steroidal anti-inflammatory drug indicated for acute and long-term use in the management of signs and symptoms of osteoarthritis and pain. *See* Physicians' Desk Reference (PDR) 53rd ed. (1999) 3322-3323.

[7] Stelazine is indicated for management of the manifestations of psychotic disorders. PDR, at 3092.

[8] Paxil is an antidepressant. PDR, at 3078.

5

medications. [R. 348B].  Again, there is no evidence of complaints or treatment related to incontinence.

The ALJ decided that Plaintiff had failed to establish a severe impairment at step two. [R. 393].

## Development of the Record

Plaintiff contends the ALJ failed to adequately develop the record with regard to her urinary and bowel incontinence.  Plaintiff is correct that the ALJ has a duty to obtain pertinent, available medical records which come to his attention during the course of a hearing. [Dkt. 23, p. 5]. *See Henrie v. U.S.Dept. of Health & Human Svs.*, 13 F.3d 359, 360 (10th Cir. 1993) (ALJ has basic obligation to ensure an adequate record is developed consistent with the issues raised).  However, Plaintiff has not identified any existing medical records or evidence that the ALJ failed to obtain.

At the first hearing on June 21, 2002, Plaintiff acknowledged her "medical file seems to be rather sparse" and that she had not seen any doctors since her hospitalization in 1999 for cellulitis other than the doctors to whom the Social Security agency had sent her for evaluation. [R. 256].  The ALJ agreed with Plaintiff's attorney that a consultative examination was needed. [R. 277-278].  He obtained an evaluative report from an internist who examined Plaintiff, noted her "history" of rectal and urinary incontinence but found no abnormalities or limitations. [R. 224-235].

At the second hearing on February 1, 2006, Plaintiff's counsel submitted new medical evidence consisting of treatment records from Dr. Nelms and advised the ALJ that the record was complete. [R. [R. 351-352, 358].  Plaintiff testified she had been treated by Dr. Nelms for "the suddenness and the urgency," but the records from Dr.

6

Nelms do not contain any complaints of incontinence; nor was there any indication in the record that Dr. Nelms prescribed Detrol LA[9] for those problems as Plaintiff alleged in her testimony. [R. 348B, 367, 370].

A claimant is responsible for furnishing medical evidence of claimed impairments. *See* 20 C.F.R. S 404.1512(a), (c). Although the ALJ has the duty to develop the record, the ALJ is not required to act as the claimant's advocate in order to meet this duty. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (counsel may not rest on the record and later fault the ALJ for not performing a more exhaustive investigation). The ALJ considered all the medical records that were available and he obtained an evaluative report from an examining medical consultant. Plaintiff has not demonstrated what "further development" was required of the ALJ with respect to her claims of incontinence. The Court finds no error with respect to the ALJ's duty to fully develop the record in this case.

## Step Two Determination

At step two, the ALJ determines whether the claimant has an impairment or combination of impairments which significantly limit(s) her ability to do basic work activities. 20 C.F.R. § 404.15.20(c). It is the claimant's burden to demonstrate an impairment that significantly limits her ability to do basic work activities at step two. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The step-two severity determination is based on medical factors alone, and "does not include consideration of such vocational factors as age, education, and work

---

[9] Detrol is indicated for the treatment of patients with overactive bladder with symptoms of urinary frequency, urgency or urge incontinence. PDR, at 2478.

7

experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). A physical impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical ... impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508 .

No medical evidence supports Plaintiff's allegations of severe urinary and bowel incontinence; her testimony alone cannot establish an impairment. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990) (per curiam) (subjective complaints alone insufficient to establish disability). The only medical evidence Plaintiff cites as support for her claims are recitations of the "history" she gave to the consultative physicians in their reports. [Dkt. 23]. As pointed out by the Commissioner, however, none of the physicians actually diagnosed or confirmed Lyme disease and/or urinary and bowel incontinence. [Dkt. 27]. In the absence of a showing that there is a medically determinable physical or mental impairment, an individual must be found not disabled at step two of the sequential evaluation process. *See* Soc.Sec.Ruling (SSR) 96-4p.

Because there is no evidence regarding urinary and/or bowel incontinence in the record that the ALJ failed to consider or that the ALJ improperly considered, Plaintiff's contention of error on the part of the ALJ for failing to identify such a condition as a severe impairment at step two is without merit. *See Bowen v. Yuckert*, 107 S.Ct. at 2293 (If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits).

## **Conclusion**

The ALJ's decision demonstrates that he considered all of the medical reports and other evidence in the record in his determination that Plaintiff does not have a medically determinable severe physical or mental impairment.  Because the Court finds no error on the part of the ALJ in his step two findings, Plaintiff's incidental contentions with regard to the ALJ's RFC and credibility findings are likewise without merit.  The Court finds the record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 22nd day of October, 2008.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE